[No. 8631. Department Two. January 5, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH FLANNEY, *Appellant.*[1]

HOMICIDE—DEFENSE—INSANITY—EVIDENCE—ADMISSIBILITY. Upon the defense of insanity to a charge of murder of accused's wife, after a foundation is laid by some evidence of mental aberration, it is error to exclude evidence that the wife, an Indian, had joined the Shakers, a religious organization practicing promiscuous illicit intercourse, whereby the accused was so greatly distressed in mind that his reason was dethroned; since he was entitled to the benefit of any competent evidence tending to account for or naturally lead up to insanity; and the delusion of marital infidelity is a recognized symptom of homicidal insanity.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered April 11, 1908, upon a conviction of murder in the second degree. Reversed.

*William M. Thompson* and *Henry J. Snively*, for appellant.

*J. Lennox Ward*, for respondent.

CHADWICK, J.—To sustain this appeal appellant submits three assignments of error, but one of which can be considered by us, owing to the incomplete state of the record. Appellant was charged with the crime of murder, and convicted of murder in the second degree. His defense was insanity at the time of the killing. His victim was his wife, for whom it is asserted he possessed a real affection and with whom he had lived happily for many years. Some time before the killing, his wife had left him and had sought a divorce on the grounds of cruelty, it being shown that, although industrious when sober, like most men of mixed blood—he being a half-breed Indian—his conduct was coarse and cruel when under the influence of liquor. The theory of the defense was that he was insanely jealous of his wife, and believed or cherished the delusion, whatever the fact may be, that his

[1]Reported in 112 Pac. 630.

wife was unfaithful to him; that nevertheless he constantly importuned her to return to him and to her children, a mission he was about at the time of the killing. When she finally refused to leave her then associates and return to her home and to her children, he shot her dead, and in attempting suicide, so wounded himself that he lay unconscious for nearly twenty-four hours. It is unnecessary to go over the positive circumstances relied on to show appellant's mental irresponsibility at the time of the killing. They are not pertinent to our present inquiry, except to say that they furnished, in a degree to be determined by the jury, a foundation for certain evidence which we find was erroneously excluded by the court.

Appellant called a witness by whom he attempted to prove that the wife of appellant had taken up with what is known among the Indians as the Shakers; that the man of whom appellant was jealous, and whom he charged with having weaned his wife away, was a Shaker; that the Shaker Society is an Indian religious organization, which teaches and practices promiscuous, illicit intercourse among its members, and that it is the duty of a member having a spouse who is not one of that faith to secure a divorce; that appellant knew of his wife's faith and, suspecting her of lewd conduct, was so greatly distressed in mind that for the time his reason was dethroned. The offer to prove these things was rejected by the court. We regret that the state has not seen fit to file a brief, for we deem the question presented to be one of more than usual interest and importance. We have made an earnest research of the authorities, and find that it is a first principle of the law that, in all cases involving mental responsibility, whether it be in regard to contracts, wills, etc., or crimes, every fact which tends to show that the mental condition of the subject was abnormal, at the time of the execution of the instrument or commission of the crime, is competent. Underhill, Criminal Evidence, § 159. For the mind diseased cannot be measured by the mind of another. Neither the moving cause nor the limit of its aberration is to be calculated

by any standard fixed by the law or medical science. Each case fixes its own relation to the law. What may unbalance one mind and lead it to act upon its criminal impulses may have no bearing whatever upon another. Therefore it is important that all things which may bear upon the subject of inquiry should be submitted to the jury, that it may say whether, from all the facts and circumstances leading up to the act complained of, the accused was in fact capable of distinguishing right from wrong when he committed the act.

The leading case upon this subject, and the one most relied on by appellant, is that of *People v. Wood*, 126 N. Y. 249, 27 N. E. 362. There the court said:

"There was evidence tending to show that defendant was exceedingly fond of his wife, who was a young woman twenty-two or twenty-three years of age. The defendant was a man about thirty-five years of age, and was also a small farmer or laboring man. Both the deceased and defendant belonged to a very uneducated, illiterate and ignorant class, neither having acquired much property, and both spending a portion of their time in hunting and fishing."

In that case counsel for the defendant offered to prove that, a short time before the day of the homicide, she had told the defendant that her father had stolen his (defendant's) potatoes some three years before. This was offered for the purpose of showing the effect it had on defendant's mind in connection with other matters, but was rejected as incompetent and immaterial; as was also the offer to prove that, in another conversation held the week preceding the homicide, she had given the defendant some information as to certain acts which her father had committed upon her person. In passing upon these questions, the trial judge said:

"It is an issue that does not belong to the case here, and would not be of any value under the circumstances in this case and ought not to be, if it were admitted. The defendant is at liberty to furnish any evidence that he is able to on the subject of the mental condition of this man. That is the defense, and I do not propose if it is possible to avoid it, to

undertake to try the dead man instead of the defendant who is on trial here."

In delivering the opinion of the appellate court, Justice Peckham, afterwards justice of the supreme court of the United States, said:

"The defense is not confined to proof of the condition of the mind of defendant at the moment when he struck the blow or fired the shot. Any material fact which might account for or naturally lead to insanity at that moment may be proved. Why should not the defendant have the right to prove a moral cause which might act upon a brain already diseased and might result in insanity as naturally as blows upon the head? This in connection with evidence tending to show insanity at the time of the act done, is proper. I do not say that proof of these facts, any or all of them, is proof of insanity. That is for the jury to decide. But it is competent for the reason that all the facts are material for the purpose of enabling the jury to say what was the condition of mind of defendant when the deed was perpetrated. The defense is entitled to prove more than the fact that after a certain time when something was told defendant he exhibited certain changes of deportment or appearance. He is entitled to have the jury see that there was a cause sufficient to account for and to create such alteration in conduct and appearance. It greatly tends to strengthen the proof of such alteration. It is admissible for the same reason that evidence is competent to show that the party had a fall on his head, or had been a sufferer for years from some kind of physical ailment which had naturally a depressing influence on the mind."

This case establishes the principle that "a party is entitled to the benefit of any competent evidence he may offer which bears upon a controverted question of fact embraced in the issue." *People v. Corey*, 148 N. Y. 476, 42 N. E. 1066; *People v. Strait*, 154 N. Y. 165, 47 N. E. 1090. The *Wood* case is noted by Clevenger in his work on Medical Jurisprudence of Insanity, page 509, and upon its authority he says:

"The defendant who interposes insanity as a defense may

prove not only irrational and insane acts and conduct,.but also facts which may account for such acts and show an adequate cause for the insane conduct, and . . . [p. 519] as tending to show what effect the communication had upon his mind at the time of the commission of the act, . . ."

The case is also quoted as authoritative by Wharton & Stille, Medical Jurisprudence, § § 326, 327, 328. Mr. Wigmore, whose research of the authorities upon this question has been particularly comprehensive, has no doubt of the rule, saying:

"As human conditions of every sort are created or influenced by external environment, so too that diseased mental condition which we term insanity may be precipitated, intensified, or otherwise affected by external events coming to the apprehension of the person. Accordingly, circumstances calculated to induce this mental condition may always be admitted to evidence the probability of such affection; the only limitation is that the circumstance be in itself capable in some degree of producing such an effect, that it came to the person's knowledge, and that some further foundation for probability be laid by other evidence that there was a diseased mental condition." Wigmore, Evidence, § 231.

See, also, Underhill, Criminal Evidence, § 159; 7 Ency. Ev., 449; *Bolling v. State*, 54 Ark. 588, 16 S. W. 658; *State v. McGowan*, 36 Mont. 422, 93 Pac. 552; *State v. Porter*, 213 Mo. 43, 111 S. W. 529, 127 Am. St. 589.

In the *McGowan* case, the defendant was charged with the murder of one whom he suspected of having maintained illicit relations with his wife. The state offered a contract of separation, which had been executed by the parties, upon the theory that it would show that the parties had voluntarily severed any tie of affection that might have theretofore existed between them. The contract was admitted over the objection of the defendant. Upon appeal the testimony was held to be competent. The opinion reads:

"In overruling defendant's objection to this paper, the court said: 'I think I will let it go to the jury. It shows that they were living under this contract of separation. That

might throw some light upon the question to the jury whether or not the defendant was sane or insane. I think, taken with all the other evidence, it is perhaps competent.' It is now contended that the remark of the court, in characterizing the document as a contract of separation, was prejudicial to the defendant. The paper was also objected to as incompetent rebuttal evidence, but we see no force in the objection. The issue being tried was whether the defendant had been rendered insane by the assault of the deceased upon the sanctity of his domestic relations. It was certainly competent to inquire as to how intimate and sacred those relations were in fact, as bearing upon the liability or probability of defendant's becoming crazed by their destruction; . . ."

A delusion of marital infidelity is acknowledged as a type or symptom of homicidal insanity by alienists. Mr. Clevenger, at pages 650, 651, 653, 658, and 1074, cites instances to confirm this theory. So that, whether the accused had a belief grounded in fact or born of imagination, the evidence which was rejected was proper as tending to throw light upon defendant's mental attitude toward the victim of his deliberate physical act. Under all authority, it seems clear that, having laid a foundation by showing some evidence of mental aberration, appellant could show that his wife's conduct had been such as to account for the state of his mind; and that his plea was not feigned. The testimony does not prove or disprove the crime, but it is a circumstance to be considered by the jury, as a blow on the head, or a drug habit, etc. Nor does it introduce a collateral issue to be tried out. The inquiry should not go beyond such limit as will disclose the fact to the jury that there was a cause which might have moved the mind of the accused, and which they may consider as evidence tending to sustain his plea. Such testimony should go to the jury under careful instructions. Its purpose and the limit of its application should be carefully guarded; so that the jury will not take it, if true, as in itself a justification or as an excuse for the crime, nor to prove justification for anger, hatred, revenge, or an uncontrolled passion, or the momentary

impulse of a sane mind; but for just what it is intended—that is, whether, considering all the facts and circumstances offered to show an insane act, it tends to strengthen the testimony by showing an adequate cause accounting in some degree for the alleged mental condition of the accused at the time the murder was committed.

This case, like all which involve the tragedies of domestic life, is a sad one. We may assume that no man can measure the torment which a doubting husband tells o'er. If in the telling his reason so far fails that he cannot distinguish the right or wrong of his act, he is indeed an object of pity and compassion; but on the other hand if, with mental power to distinguish right from wrong, he takes the life of his victim, he should be made to feel the heavy and unflinching hand of the law. It is for the jury to say whether appellant is a felon, or the victim of an unfathomed nature. That it may make no mistake, the appellant is entitled to submit such evidence as he may, providing only that it is relevant and competent to sustain his plea.

The judgment of the lower court is reversed, and the cause is remanded for a new trial.

RUDKIN, C. J., DUNBAR, CROW, and MORRIS, JJ., concur.