STATE OF IOWA, Appellee, v. CONRAD KLUTE, Appellant.

**Instructions:** PRESENTATION OF REQUESTS. While there is no statutory requirement that a request for instructions be made in any formal manner, or even in writing, yet the statute contemplates that requests shall be presented to the court in such manner that he may know they are being made. Where counsel for defendant handed the court a set of instructions, and subsequently filed another set with the clerk who placed them on the court's desk, and the court supposing they were but carbon copies of the first set did not consider them, no cause for complaint arose; especially where the instructions given fully covered every question in the case.

**Criminal law:** MURDER: EVIDENCE: DYING DECLARATIONS. Where a decedent was informed by his attending physician that he was mortally wounded and he was fully impressed with a feeling of impending death, and he died shortly thereafter as the result of the wound, the foundation was sufficiently laid to authorize admission of his written dying declarations.

**Same:** DYING DECLARATIONS. Dying declarations are only admissible as to the facts and circumstances producing and attending death, and having relation to those things concerning which the deceased would have been competent to testify. As a general rule matters of opinion and conclusions are inadmissible. The statement of decedent, however, that defendant "just deliberately shot me" was competent.

**Same.** Where defendant and his wife testified to ill-feeling between accused and decedent, because of a claimed insult to defendant's wife,

the dying statement of decedent that he and defendant were again friendly, and that he had never insulted his wife, was admissible.

Same. The order of proof rests largely in the discretion of the trial court, and under some circumstances it may admit as part of the state's case portions of a dying declaration properly admissible in rebuttal.

Same. Where defendant claimed that the shooting of deceased was accidental, and testified on the trial that he and decedent were unfriendly, admission of the dying statement of deceased that he thought they were friendly again was not prejudicial to defendant.

Same: INSTRUCTIONS: MALICE. Express malice may be shown by the expressions of defendant, and will be inferred from the wrongful and intentional killing, done without justification or excuse. The instruction in this case is held sufficient, over the objection that it permitted a finding that the killing was malicious, without requiring proof of malice beyond a reasonable doubt.

Same: PREMEDITATION. No particular length of time is essential to premeditation; it is sufficient if the intent to kill preceded the act long enough to permit premeditation and deliberation.

Same: MOTIVE. The existence or non-existence of motive for a crime is immaterial, where the guilt of the accused is established beyond a reasonable doubt.

Same: DEFENSES: EVIDENCE: INSTRUCTIONS. Where defendant relied upon the accidental shooting of decedent, and there was no evidence in support of any other defense, the court in its instructions properly eliminated all other defenses.

Same: DYING DECLARATIONS: EVIDENCE. Evidence that the physician of decedent said to him, prior to the making and signing of his dying declaration, that his wound would prove fatal, was admissible as tending to show that he was conscious of impending death.

Same: EVIDENCE: CONCLUSION. A witness who was present at the making and signing of a dying declaration, and observed and heard the decedent at the time, is competent to state as the result of his observation that decedent seemed to understand what he was talking about, though in the nature of a conclusion.

Same: SELF-SERVING DECLARATIONS. Evidence as to statements of accused made shortly after commission of the crime is not admissible in his own behalf.

**Same:** EVIDENCE. Evidence that defendant and decedent had been drinking together, several days before the shooting of deceased, was competent for the purpose of showing the relations existing between them.

**Same:** CROSS-EXAMINATION OF WITNESS. It is proper to read extracts from the minutes of testimony taken before the grand jury for the purpose of refreshing the recollection of a witness, and for laying the foundation for impeachment.

**New trial:** MISCONDUCT: OPENING STATEMENT. So long as counsel in their opening statements act in good faith in calling attention of the jury to matters of evidence they believe to be admissible, the appellate court will not interfere.

**Same:** MURDER: INCLUDED OFFENSES. Where the killing of decedent was either accidentally or intentionally done with a deadly weapon, the court was not required to submit the crimes of assault with intent to murder, to commit manslaughter or to do great bodily injury.

**Murder:** EVIDENCE: SUFFICIENCY. The evidence in this action is held to require a finding by the jury as to whether defendant was criminally guilty of shooting decedent, or whether it was accidental; and it was for the jury to determine the degree of his guilt.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT, Judge.

THURSDAY, APRIL 10, 1913.

ON an indictment for murder in the first degree, defendant was convicted of murder of the second degree, and sentenced to imprisonment in the penitentiary for fifteen years, from which sentence he appeals.—*Affirmed.*

*D. G. Baker,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

PRESTON, J.—The case has been submitted by appellant on typewritten abstract and arguments. His counsel have

assigned ninety-eight errors relied upon for reversal, dupli-
cated the ninety-eight propositions in his points and authori-
ties, then argued them in still another division of the argu-
ment. Some of the points have been argued at considerable
length, thus making a voluminous record. We appreciate
the importance of the case, and have read the record with
care. It would not, of course, be practicable to notice all
the propositions, but those which seem to be controlling
will be discussed.

I. Appellant complains that the trial court refused to
consider his requested instructions. It appears that counsel
for defendant handed to the court a package containing
twenty-two instructions, which the court ex-
amined, and some of which were given by the
court by embodying them in its own; the
rest were marked refused. The court stated that it supposed
the first set of instructions handed up by counsel for appel-
lant were the ones he wanted the court to give to the jury;
that those which he marked refused were .handed by the
court to the clerk, with instructions to file the same, which
was done; that the court did not ascertain until after the
trial, that some of the instructions in a second set were dif-
ferent from those which had been passed upon by the court;
the court further stated that, if he had known that the second
set of instructions were in any respect different from those
that were passed upon by the court, he would have examined
the same.

1. INSTRUCTIONS: presentation of requests.

Counsel claims in his affidavit attached to the motion.for
new trial substantially that at the time these were handed
up he informed the court that he might desire to correct
some of them, or make additions to them. The court in its
ruling on the motion for new trial and statement, or finding
in reference to this matter, does not remember the transac-
tion as counsel states it. Later, counsel filed with the clerk
another set or package, consisting of twenty-six instructions,
and requested the clerk to file them, and to then pass them

to the court. The clerk did place them on the court's desk. The court examined the first one, and found it to be the same as the first one in the other package, and supposing the others were the same, and that one package was a carbon copy of the other, paid no further attention to the second set. While there is no requirement by statute that a request for instructions must be formally made, or made in writing, yet we think the statute does contemplate that the person asking instructions shall so present them to the court that the court may know they are being asked. The request should be made by counsel in such a way that there would be no misunderstanding that a request is made. In the instant case the second set of instructions was not even handed to the court by appellant, his counsel, or any person representing him. The instructions given by the court fully cover every question in the case, and we have to say that the instructions requested by appellant in both sets were fully covered by the instructions given by the court.

II. A written dying declaration of deceased was admitted in evidence. Defendant objected to the statement as a whole, and to certain parts of it, on the ground that it contained matters not properly admissible as a dying statement, for the reason that as to some of such matters deceased could not have been permitted to testify had be been a witness, and as to other matters that opinions and conclusions were stated.

2. CRIMINAL LAW: murder: evidence: dying declarations.

It cannot be fairly claimed that the foundation was not sufficient. The shooting occurred about 11 o'clock on the night of December 23, 1911. Deceased was shot in the abdomen; the bullet cutting the intestines in several places. Deceased was informed by the physician that the wound was mortal. From statements made by deceased to others, and in the written declaration itself, his mind was impressed with the feeling of impending death, and he did die Tuesday morning, December 26th.

A brief statement of the facts in regard to the shooting will give a better understanding of the objections made to the dying declarations. The shooting took place in defendant's home. Deceased came there at about 8 o'clock in the evening and stayed until about 11 o'clock. For two or three years deceased had been going to defendant's house at night to visit and drink with defendant, sometimes staying all night. About July, 1911, defendant claims that deceased insulted his wife, and that he ordered deceased to not come to his house again. He claims that, when deceased came there on the evening of the 23d, he did not wish deceased to come in, and so told him. Deceased did come in, however, and he and defendant visited together and drank together. Defendant claims that on this evening, and on other evenings when deceased had been there, he had ordered him to go home; but we are impressed with the thought that these were more requests to go home because it was late, and bedtime, than for any other reason. It appears that deceased did not visit defendant's home after July until the evening in question, but in the meantime they had drank together at other places, and there had been some business dealings between them, and that at one time deceased helped defendant when his team had become mired in the sand. These transactions last referred to were after July, and after defendant claimed deceased had insulted the wife. Defendant and his wife testified on the trial in regard to the alleged insult to defendant's wife, although the wife is impeached by several witnesses to whom she said that it was not true. Defendant's only defense was that the shooting was accidental. The dying declaration recites the version of deceased in regard to the shooting and the transactions of the evening, and that defendant did the shooting. The declaration is somewhat lengthy, so that we do not deem it necessary to set out the whole writing.

It is well understood that dying declarations are only admissible as to the facts which point to the cause of death,

and to the circumstances producing and attending it, and the general rule is that matters of opinion and conclusions are inadmissible; that they are admissible only as to those things to which the deceased would have been competent to testify. *State v. Baldwin,* 79 Iowa, 714; *State v. Perigo,* 80 Iowa, 37; *State v. Sale,* 119 Iowa, 1; *Worthington v. State,* 92 Md. 222 (48 Atl. 355, 56 L. R. A. 369, 84 Am. St. Rep. 506) ; 21 Cyc. 973.

*3. SAME: dying declarations.*

One of the statements in the declaration of which complaint is made is "He just deliberately shot me." As to this statement, the matter is ruled by *State v. Fielding,* 135 Iowa, 255, where substantially the same statement was made and was held admissible and proper, the court saying that the statements related to the act or transaction of the killing, and that, while they were general in their nature, they tended to prove a collective fact involving the defendant's guilt.

Other statements complained of are, "I thought we were friendly again;" another, "I didn't have anything to do with his wife last night except to exchange a word or two;" another, "I have never at any time insulted his wife." It should be said in this connection that when objection was made to the dying statement, and the different parts, the court in ruling on the objection said: "In view of what was said by counsel for the defendant in his opening statement to the jury, I will admit it." What defendant's counsel did say to the jury does not appear in the record. But, as we have shown, the defendant and his wife testified to facts tending to show that there had been ill feeling between defendant and deceased because of the alleged insult to defendant's wife, and that deceased had in fact insulted her. It is quite clear that, if deceased had been living and a witness, he would have been permitted, in rebuttal at least, to testify to all these matters which we have quoted as being contained in the dying statement.

*4. SAME.*

It may be that some of these statements would have been

rebuttal, but the order of the introduction of testimony is a matter of discretion with the trial court.   Under the circum-

5. SAME. stances here shown, we think it is a proper inference that counsel in his opening state-ment did claim that deceased had insulted defendant's wife, and that they were unfriendly.

In *Redmond v. Commonwealth*, 21 Ky. Law Rep. 331 (51 S. W. 565), a part of the dying declaration was admitted in chief and a part in rebuttal.

In *West v. State*, 7 Tex. App. 150, the statement was, in substance, that deceased said ''he had not insulted defendant's mother,'' and the court said that if the admissibility of this testimony were to be tested alone by the bill of excep-tions, and passed on as there stated, it would fail to see that the portion of the witness' statement as to what the deceased said as to the cause of the quarrel could be said to be a state-ment of the circumstances of the death, yet, when taken in connection with the rest of the statement, they were of opinion the objectionable portion was so intimately interwoven with the thread of the narrative that it could not be separated without marring, if not destroying, the sense; and, taking this in connection with the other testimony bearing on the same subject, they were unable to see that the error, if any, was material.

In *Cleveland v. Commonwealth*, 31 Ky. Law Rep. 115 (101 S. W. 931), it was said a dying declaration otherwise competent evidence is not inadmissible because it contains minor expressions of opinion which are unimportant and not in any respect prejudicial.

In a note to 21 L. R. A. (N. S.) 840, will be found numerous cases as to statements properly admissible as dying declarations.   See, also, 56 L. R. A. 375.   The notes to these two cases contain the Iowa decisions on dying declarations.

Furthermore, it appears to us that the statement that deceased thought they were friendly again could not be preju-

dicial, even if inadmissible. The defendant's testimony

tended to show that they were unfriendly,

6. SAME.

and this would tend to show a motive for the intentional shooting of deceased by defendant. The defense was that the shooting was accidental. If the parties were friendly, that would have a bearing in defendant's favor on the question of accidental shooting. The instructions given by the court in regard to the weight to be given dying declarations, and the instruction requested by defendant on that subject, are covered by what is said by this court in *State v. Schmidt*, 73 Iowa, 469.

III. The instructions are complained of, substantially all of them. As to No. 10, it is argued that the language therein would permit a finding that the killing was malicious

without holding the state to prove malice be-

7. SAME: instructions: malice.

yond a reasonable doubt. In this instruction the court correctly defined express and implied malice, and told the jury that the existence or nonexistence of malice may be shown by expressions used by the defendant, or that there may be an inference drawn by the jury from all the facts and circumstances disclosed in the testimony, and further plainly told the jury that if the evidence shows beyond a reasonable doubt that the killing was wrongful, that it was intentionally done, and without justification or excuse, malice might be inferred from such circumstances, or by both expressions of defendant and the circumstances. We have not attempted to quote exactly, but this is the substance. We think the instruction is correct. Express malice may be shown by expressions of defendant, and malice will be presumed from the killing under such circumstances. *State v. Dillingham*, 143 Iowa, 282.

Instruction 12 is criticised, and counsel in argument say that this court has never gone so far as the one in question. The instruction has reference to the length of time necessary

to constitute premeditation and deliberation,

8. SAME: premeditation.

but the language is the same as that used and approved in *State v. McPherson*, 114 Iowa, 492.

It is claimed that instruction 17¼ recited facts, as a basis for the instruction on the law, that did not exist. This has reference to the discharge of the revolver during a scuffle. There is evidence in the record justifying the instruction. Defendant testified, when he (deceased) had hold of this gun, "he swung it over the left, then he pulled me back toward him. That was when I got down. He gave me a swing to the left first, and then came back this way." Defendant's son testified in regard to a scuffle between the two, and that his father "sort of stumbled over at that time."

Instruction No. 18, in regard to motive, is criticised. The complaint is without merit. The rule as to motive was properly stated in the instruction. The existence or non-existence of motive is immaterial where the guilt of accused is established beyond a reasonable doubt. *State v. Whitbeck*, 145 Iowa, 29. In this case, however, the jury were justified in finding that a motive was disclosed by the evidence, some of which has been heretofore referred to.

9. SAME: motive.

Instruction No. 19 properly describes murder of the second degree.

It is said that instruction No. 23 eliminated all of appellant's defenses except the one that the shooting was accidental. We are unable to find anything in the record that there was any other defense than that, and counsel has not pointed out any evidence of any other defense. The defendant as a witness did not at any time claim he was acting in self-defense, for he says: "I did not at any time intentionally discharge the revolver." He does not claim that he was assaulted by the deceased, or that he believed himself in danger. There is evidence tending to show that defendant got the revolver from the clock shelf and pointed it at the deceased, and said he would shoot him, and that the deceased turned around and when he saw the situation grabbed for the revolver; that there was a scuffle, and the defendant claims the revolver

10. SAME: defenses: evidence: instructions.

was accidentally discharged. Defendant also says that he got the revolver to scare deceased to have him go home. This circumstance is properly covered by instruction No. 24.

IV.  Dr. Whitehill was called as a witness, and testified that he saw deceased the night of December 23d, and that deceased was taken to the hospital and the abdomen was opened; that on Sunday evening, December 24th, at the hospital, the witness talked to deceased as to the nature of his wound, and this question was asked: "Q. State whether or not you told him the wound was fatal." And, over objection, the witness answered: "I told him his wound would be fatal." It is said the admission of this evidence was erroneous. This was before the dying declaration was made and signed. It was admissible as a circumstance tending to show that deceased was conscious of approaching death. *Territory v. Eagle*, 15 N. M. 609 (110 Pac. 862, 30 L. R. A. [N. S.] 397, Ann. Cas. 1912C, 81). The witness testified that he had told deceased that afternoon that he thought he could not get well. Witness also stated that deceased was rational at the time the dying statement was taken.

11. SAME: dying declarations: evidence.

V.  The sheriff, Mr. Reed, was present at the time the written dying declaration was made and signed; he heard the statement made by deceased, observed him, and heard him talk. Thereupon, this question was asked the witness: "Q. What condition was he in, Mr. Reed, from the way he talked and acted, as to whether or not he knew what he was doing and saying?" Over objection, the witness answered: "Well, he was very sick, but seemed to understand what he was talking about." It is said this question called for the opinion and conclusion of the witness, and was incompetent because not based upon any facts shown in the evidence. The medical witnesses and others had described the surgical operation, the appearance of deceased, and other like matters. The question itself called for evidence in the nature of a conclusion, but

12. SAME: evidence: conclusion.

the answer is the statement of the result of observation and knowledge as to a collective fact, and is competent. The witness had seen and talked with deceased, but could not well detail to the jury all the things he observed that caused him to conclude that deceased was conscious and knew what he was doing. *State v. Rainsbarger,* 71 Iowa, 746; *Craig v. Railway,* 121 Iowa, 471; *Moyers v. Fogarty,* 140 Iowa, 701; *Vannest v. Murphy,* 135 Iowa, 123; Jones on Evidence (Pocket Ed.) section 360; 17 Cyc. 136.

VI. After defendant was arrested, he was taken to town by the sheriff in the sleigh with deceased. · The sheriff testified that while in the sleigh, and while deceased was suffering,

13. SAME: self-serving declarations.

defendant said: "By Golly, by God! I fix him. Let me at him." To meet this, defendant sought to show statements by defendant to witness Marshall. At this point the record shows the following: "Q. During the time you were there, you may just tell what Mr. Klute said and did, if he said and did anything." This was objected to as immaterial, hearsay, and constituting a self-serving declaration of the defendant. The objection sustained. "Mr. Baker: If the court please, now I may be wrong in this matter, but I would like to suggest to you in the proper way, as to why I think this evidence ought to be admitted. Now there was evidence given by the sheriff here as to statements made by defendant on the way up in the sled. Court: The court will allow you to introduce any evidence you may have that contradicts those statements, but, so far as any independent statements are concerned, that would come under another rule. Mr. Baker: Well, if the court please, it is not for the purpose of denying or disputing those statements directly, but it is for the purpose of showing that at least he did not intend to do, and did not care to do, what the sheriff said that he stated he wanted to do on the way up in the sled." The objection sustained. The record does not show a specific offer, but it is evident that the purpose was to show statements by defendant

in his own favor, and which were self-serving. It was shown fully what defendant did. The time referred to must have been a half hour or more after the shooting. The witness was a neighbor living a block or more away who had been summoned by defendant's son. He had dressed and called another neighbor, which he says would take ten or fifteen minutes. He had telephoned for the police, and walked to defendant's house, where he sat, talking and visiting with defendant and his family. The evidence as to what defendant said was clearly incompetent.

VII. Other rulings on the admission of testimony are complained of. It is said the court erred in permitting a witness to testify, over defendant's objection that defendant and deceased had been drinking together some days before the shooting. This was proper for the purpose of showing the relations existing between defendant and deceased, and that friendly relations had been resumed, or at least that deceased so considered it.

14. SAME: evidence.

Complaint is made that the county attorney in cross-examination of a witness read extracts from the minutes of her testimony before the grand jury. This was proper for the purpose of refreshing her recollection and for the purpose of laying a foundation for impeachment. The minutes were not offered in evidence.

15. SAME: cross examination of witness.

VIII. Complaint is made that the county attorney was guilty of misconduct in his opening statement to the jury, and that statements made by him were improper and prejudicial. The matters complained of have reference to the statement by the prosecutor as to the drinking habits of defendant and deceased and their drinking together; that when defendant was under the influence of liquor he became sullen and abusive, made him jealous of his friends; and that while under the influence of liquor he was disposed to harbor in his mind what he imagined was some wrong that some one had done

16. NEW TRIAL: misconduct: opening statement.

him, and caused him to accuse his wife of being intimate with other men, and that that was one of the things that caused the trouble at the time of the transaction in question. There was evidence as to some of these matters, and they were proper as tending to show the relation between the defendant and deceased, and their disposition. There appears to have been no bad faith on the part of the prosecutor. The rule is that some latitude must be given counsel in the opening statement, and so long as they act in good faith, believing that the evidence is admissible, this court will not interfere. *State v. Allen,* 100 Iowa, 9; *State v. Trusty,* 122 Iowa, 82.

IX. The court instructed as to murder in the first degree, and included offenses of second degree and manslaughter.

17. SAME: murder: included offenses.

Appellant contends that the court should have instructed as to assault with intent to commit murder, assault with intent to commit manslaughter, and assault with intent to inflict a great bodily injury. Under the evidence, the shooting of deceased was either accidental or intentional. It was done with a deadly weapon and death resulted. It is too clear for discussion that the court was not required to instruct on the lower degrees or offenses.

X. It is claimed that the verdict is not sustained by the evidence. We think otherwise. Some of the evidence has

18. MURDER: evidence: sufficiency.

been referred to in the opinion, and besides this there was evidence of other troubles between the parties prior to the shooting. One of such was in regard to deceased hitching to defendant's cultivator, and breaking it, during some of his visits to defendant's house, and about which there were some words. That on one or two occasions prior to the shooting defendant told deceased that something might happen to him if he came to his house. There are other circumstances which we have not detailed. The evidence was such that it was for the jury to say whether the shooting was accidental, or whether the defendant was criminally guilty, and, if so, the degree or

grade of his guilt. Defendant's motion to strike additional abstract is overruled.

The defendant has had a fair trial under the law, and the judgment is *Affirmed*.