146 So. 82

## SANDLIN v. STATE.

### 6 Div. 309.

Court of Appeals of Alabama.

Jan. 26, 1933.

312

Davis & Curtis, of Jasper, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Pennington & Tweedy, of Jasper, for the State.

SAMFORD, Judge.

There appears in the record sixty-six written charges signed by the trial judge. Thirty-nine of these are marked given and twenty-seven are marked refused. Many of these charges marked refused are substantially covered in other written charges, and the principles of law, when correctly stated in the remaining charges, were covered in the full, clear, and able charge of the trial judge. Moreover, it does not appear from the record as to whether these charges were requested by the state or the defendant, and therefore cannot be considered as a basis for reversal. Jackson v. State, 22 Ala. App. 133, 114 So. 68; Jackson v. State, 216 Ala. 564, 114 So. 69.

On the cross-examination of defendant's witness L. C. (Shot) Jones, the state was permitted to prove that at the time witness went down to the place of the homicide he was "drinking." This was not error. The jury was entitled to know the mental condition of each witness, at and near the time of the difficulty. If the witness was under the influence of whisky, the jury was entitled to know that fact, as tending to test the reliability of his testimony.

It was also relevant and proper for the state to prove on the cross-examination of defendant's witness Jones that there at the filling station, to which place witness came about 7 o'clock p. m.: "They (meaning defendant, deceased and others named) were gambling and drinking and that they kept this up until they quit." There was evidence tending to prove that this homicide grew out of a game of cards, attended with the drinking of whisky, which was being played in the office to a certain described filling station on the Bankhead Highway just out of Carbon Hill. The game was on at 7 o'clock and continued until about 3 the next morning, when it broke up and culminated in this homicide. The jury was entitled to have all of the facts attending that game and the surrounding circumstances attending it, including the fact that while the game progressed the parties continued to drink. These facts not only might have a tendency to prove the fault as to the beginning of the fatal difficulty, but the state of mind of the witnesses who on the trial undertook to give their version of the affair. Weems.v. State, 222 Ala. 346, 132 So. 711.

There was objection and exception by the defendant to the action of the court in permitting the state to prove that during the progress of the game, there was present a girl named Gladys O'Brien, and when she left. The way we read the evidence in this case, this homicide was the culmination of, and grew out of, a game of "stud poker" begun early in the night, in the office of the filling

station, during the progress of which, the parties were also engaged in drinking. We are, therefore, holding that the res gestæ covers and embraces the time when the game began until and including the killing. Therefore any evidence as to who was present during the game, and what they did there at that time relating to the game or to the drinking, is relevant and competent testimony. In passing on the question involved, the jury should, as far as possible, have a true picture, not only of the physical surroundings, but of all the parties present. The case of the state is largely circumstantial, and where this is the case, slight circumstances, apparently innocent in themselves, may, when connected, become very important in the completion of a chain. Roan v. State, 225 Ala. 428, 143 So. 454.

In this connection it was relevant to prove who was in charge of and operating the filling station as tending to show who was legitimately present at the filling station at the unusual hour when the killing occurred.

■ When the state's witness Moore was being examined, he was asked, on cross-examination, regarding a conversation which he and Judge Curtis, one of defendant's counsel, had had. Moore testified that in the *conversation* he had not told Judge Curtis that: "I heard two small shots and then immediately the big shot. I heard two small shots and then the big one." As a witness for defendant, Judge Curtis contradicted this, and Moore was recalled by the state and asked to give the whole conversation, which he proceeded to do, over the objection and exception of defendant. In testifying Judge Curtis undertook to tell what was said and done by Moore in the conversation from which the predicate was taken and of which it was a part.

There is no rule of law better known than that where one party to a suit has brought a part of a conversation, the other party may testify as to the whole and to give in evidence his version as to what took place. Testimony having been introduced by defendant that Moore had made the statement, which he denied, it was proper to allow him to state the entire conversation. Brewer v. State, 209 Ala. 411, 96 So. 198; Martin v. State, 119 Ala. 1, 25 So. 255; Cathcart v. Webb & Morgan, 144 Ala. 559, 42 So. 25.

The above will also apply to the predicate laid to Moore in the presence of Attorney Shepard and as to which the defendant also testified.

■ During one of the several re-examinations of the witness Moore, the following occurred:

"Cross-examination:

"I heard that the State put all the other witnesses in jail. I came over here and had a conversation with the Solicitor. I had a talk with him. I certainly did not agree that I would tell the story if they would not put me in jail. I did not have an understanding that he would not put me in jail after I told him that story. He didn't put me in jail. Wasn't anything said about that part of it. I knew that the others were in jail. Mr. Burroughs came for me. He came and brought me to the Solicitor, and I talked to him. He didn't put me in jail.

"Redirect examination:

"The Solicitor asked the witness the question:

"I asked you to tell the truth?

"Counsel for defendant objected to the question on the grounds that it was incompetent, irrelevant and immaterial. The court overruled said objection, to which action of the court in overruling said objection the defendant then and there duly excepted.

"The witness answered:

"Yes, sir. (the witness continued) There was no frame-up between you and me. You asked me to tell the truth. I said I would do it. Not a word was said about putting me in jail."

As a primary proposition the solicitor would not be allowed to ask the question objected to, but in view of the cross-examination just preceding, and of the suggestiveness contained therein, we think it was very proper for the solicitor to bring out the fact that in interrogating the witness prior to trial he was seeking only the truth.

■ During the progress of the trial and while the court was in temporary recess, and after the witness Moore had given testimony in behalf of the state, there was evidence tending to prove that this defendant accosted Moore in the hall of the courthouse and in the presence of others said to him: "You have sworn a damned lie and I will see you in Carbon Hill." If this testimony is true, the act was not only a flagrant contempt of court, but was an act tending to intimidate a witness who, though he had once testified, was still subject to the call and protection of the court. There are many adjudicated cases upholding the above view where the intimidation occurs before the witness has testified. Ex parte State ex rel. Attorney General, etc., 209 Ala. 5, 96 So. 605; Bufford v. State, 14 Ala. App. 69, 71 So. 614; McCullar v. State, 20 Ala. App. 585, 104 So. 436; 62 A. L. R. 136 note. It is also held that such evidence will not be rejected because it proves another offense. Baker v. State, 190 Ind. 385, 129 N. E. 468. We see no reason why the rule should not continue to apply so long as the witness sought to be intimidated is liable to again be called to testify in the case then on trial and we so hold.

We find no error in the record, and the judgment is affirmed.

Affirmed.