280 So.2d 209

**Mellis W. HAISTEN, Jr.**

**v.**

**STATE.**

**7 Div. 226.**

Court of Criminal Appeals of Alabama.

June 29, 1973.

Bell & Lang, and William A. Short, Jr., Sylacauga, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CLARK, Supernumerary Circuit Judge.

Appellant, Mellis W. Haisten, Jr., prosecutes this appeal from a judgment of the Circuit Court of Talladega County adjudging him guilty of taking or attempting to take immoral, improper, or indecent liberties with a female child under the age of sixteen years with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of one of

the two or of both, for which he was sentenced to imprisonment for a term of five years. The judgment was duly rendered and the sentence imposed by the trial court after a jury had found the appellant guilty as charged in an indictment, to which he had entered a plea of not guilty. In all material respects, the indictment followed the language of Act No. 397, Acts of 1955 p. 932; Title 14, § 326(2), Code of Alabama, Recompiled 1958. The sufficiency of the indictment has not been challenged, and we see no basis for such a challenge.

According to the testimony of the child involved, she was fourteen years of age at the time of the alleged commission of the crime, February 2, 1972, had become ill on her way to school on a school bus that morning, and, upon seeing a boy friend of hers parked adjacent to a bus stop and prior to arrival at school, she got off the bus and requested a ride home. He complied with her request and dropped her off at the church yard near her home. Not having a key to the house, she had to crawl in an unlocked window. Her parents both worked, and at the time neither was at home. She testified that upon getting in the house, she washed off her makeup and changed into a shirt and pants and telephoned to talk with her mother at work, and upon being unable to get in touch with her mother, she left a message for her. She thereafter sat down in her living room and watched television. She heard someone at the door, but before she had a chance to get to the door the defendant, her uncle, had unlocked it and come in. The defendant lived with the child's grandmother, the defendant's mother, about five or six hundred yards away. Whenever the defendant wanted a place to stay, he would come to the home of the child involved and her parents. The defendant stated he wanted to use the telephone, but he did not use it. He asked for a cup of coffee, which she took to him. He asked her if she liked to read and upon her answering in the affirmative, he stated he had some books down at his house that she

might want to read. He then left the house and in about five to seven minutes returned with a magazine and a paper back book. She looked at the magazine and he looked at the book. She saw a few pictures of women in the nude or semi-nude. She went to look out the window of the living room. He came up behind her; he put his arms around her shoulders and started running his hands down from her shoulders to her waist, rubbing both hands over her breasts. She told him to leave her alone. He kept telling her that she needed someone to love her. He then dragged her into the bedroom, having his arms around her and tightening them up around her waist. He slung her down on the bed, sat down beside her, putting his hands up under her blouse and pants, and tried to get her pants off. He tried to unzip her pants which zipped in the back, but the zipper got hung. He kept trying to get her pants off and he had his hands down in her pants and felt of her female organs. She kept trying to get away from him; they were there about five minutes and finally she did get away from him and ran across the hall to the bathroom and locked the door. He came to the bathroom door and asked if she was mad. She told him to go away and he told her not to tell anybody. She was in the bathroom about three minutes. She heard the front door shut and a car drive up, and she went outside. It was her mother who had driven up in a car.

The girl's mother and father testified as witnesses for the State. The mother testified that when she arrived home the daughter was in hysterics and that she (the mother) immediately called her husband (the girl's father and the defendant's brother) who testified that when he came home and saw his daughter he called the office of the County Sheriff.

The defendant, the only witness for the defense, denied in his testimony that he had attempted to take liberties with the girl. He testified that he was 47 years old at the time of the incident involved, that

**506**

his reason for being in the girl's home at the time was that the key to the house had been given to him by his mother with the request that when the children came home at noon he give the key to them so they could get in the house. The defendant's testimony as to the key was corroborated by a stipulation or showing as to what defendant's mother would testify, agreed upon between the State and the defense, to the effect that the girl's mother and father had left the key with defendant's mother and that she had requested the defendant to give the key to the children when they came in.

In rebuttal the State called as a witness another uncle of the child involved, a brother of defendant.

Appellant's insistence on a reversal centers exclusively upon what took place, while said witness was being questioned by the District Attorney, as follows:

"Q. And I'll ask you to tell the jury ya'll were driving up the road or down the road—you were coming towards Talladega—is that right?

"A. Yes, Sir.

"Q. Whether or not he told you or said in your presence this or this in substance: talking about this case—if they find me guilty, I'll kill that bitch—

" 'MR. SHORT: We'll object. I don't think the predicate as to the time has been properly lain.

"Q. Did he say that more than once in your presence?

"A. No, sir."

■ The defendant had previously been asked as to whether he had made such statement to the witness and he had denied doing so.

Attorneys for appellant urge that reversible error was committed in "permitting the State to call a rebuttal witness and contradicting the Defendant's denial" of the alleged statement; that the alleged statement is as to a collateral matter and that it cannot be contradicted by the party asking the question but is conclusive against such party. The State counters by urging that the record shows that the witness did not answer the question to which defendant objected and of which appellant now complains, in that the only question answered by the witness relative to any statement by the defendant was answered favorably to defendant. The above quotation from the transcript supports the position of the State. Whether the action of the trial court in overruling defendant's objection is to be deemed to have applied to an objection to the first question, which was not answered, or to the second question, which was answered favorably to defendant, or to both questions, the action does not constitute reversible error. To hold otherwise would be in conflict with well established rules that reversible error cannot be predicated upon the overruling of an objection to a question which is not answered, Woodard v. State, 253 Ala. 259, 44 So.2d 241, or to a question answered favorably to the objector. Stephens v. State, 250 Ala. 123, 33 So.2d 245; Brown v. State, 45 Ala.App. 391, 231 So.2d 167.

■ By holding as stated above, we do not wish to be understood as subscribing to the view that there was involved an effort to impeach defendant as a witness on a collateral or irrelevant matter or that the testimony elicited from the rebuttal witness involved a kind of evidence that is admissible solely for the purpose of impeaching a witness. In Wharton's Criminal Evidence (13th ed.) # 467, it is stated, "A test of whether a matter pursued on cross-examination for the purpose of impeachment is irrelevant or collateral is whether the cross-examining party would have been entitled to prove it as part of his case in chief." Even though the interrogation was as to a statement that defendant had previously denied making, it has been repeat-

edly held by the courts of this State and elsewhere that similar testimony is admissible against the defendant on the issue of guilt or innocence. It falls within the category of a party's implied admissions, in that it tends to show an attempt by him to suppress evidence. This Court held in Ellis v. State, 46 Ala.App. 289, 241 So.2d 130, as follows:

"* * * testified that the day before he took the stand as a witness defendant said to him that 'if I witnessed against him he'd kill me.' Allowing this testimony over objection was not error. It evidenced an attempt on the part of defendant to suppress testimony. State ex rel. ex parte Attorney General, 209 Ala. 5, 96 So. 605. It was not due to be rejected because it proves another offense. Sandlin v. State, 25 Ala.App. 311, 146 So. 82."

Illustrations of the application of the principle are found in 2 McElroy, The Law of Evidence in Alabama, (2d ed.) 27 § 190.02, as follows:

"Liles v. State, 30 Ala. 24 (accused's order to his wife, 'go off and hold your tongue, and speak to nobody about it'); Whatley v. State, 209 Ala. 5, 96 So. 605, syl 1 (Criminal seduction; letter by accused to prosecutrix threatening to kill her if she appeared as a witness against accused); Woodard v. State, 253 Ala. 259, 44 So.2d 241, syl 11 (accused told a person not to talk to officers investigating the charged homicide); Sandlin v. State, 25 Ala.App. 311, 146 So. 82, syl 7 (accused during recess in his trial for murder, charged state's witness with having sworn a damned lie, and saying 'I will see you later in Carbon Hill, Ala.') Anno: 38 A.L.R. 595."

The cases cited above relate to threats addressed to witnesses, or potential witnesses, but it stands to reason that a calculated effort to unsettle the mind of a witness or the addressee, or both, and materially affect the action of a witness could at times as well be made by a threat against the witness communicated to a third person, particularly one closely related to the witness, and that the rule permitting threats against witnesses to be shown in evidence should apply to a threat to take the life of the principal witness, in her early teens, made by the defendant to his brother, an uncle of the witness.

Testimony as to a threat against a potential witness apparently made to a third person by the defendant was held inadmissible in Cobb v. State, 20 Ala.App. 3, 100 So. 463, but in that case the Court said, "But the threat made by defendant, to the effect, if Wilson swears that 'I burned that store, I'm going to kill him,' made while Wilson was in jail charged with the offense and before Wilson had made a statement and before Wilson had been summoned as a witness, is not competent. Such a statement is perfectly consistent with a consciousness of innocence and a resentment of any imputation of guilt." In that case the defendant was charged with arson of a store and proof of his guilt was dependent upon the testimony of the witness Wilson, who admitted setting fire to the store. The peculiar facts of that case, not like those here, seem to distinguish it from the general rule of admissibility of such threats.

The fact that the interrogation was of a rebuttal witness does not militate against this determination, for it is within the discretion of the trial court to allow evidence in rebuttal although it might have been presented in chief. Emerson v. State, 281 Ala. 29, 198 So.2d 613.

We have considered the entire record as provided by Title 15, § 389, Code of Alabama 1940, and conclude that there is no prejudicial error therein and that the judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Hon. Leigh M. Clark, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7,

1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.