LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of an assault with intent to murder Leroy Wilson by shooting him with a pistol. The court sentenced him to imprisonment for three years.
There is no conflict in the evidence to the effect that defendant shot the alleged victim and that the wound caused him to be hospitalized fifteen days. There is definite conflict between the testimony of witnesses for the State, particularly the victim, and witnesses for the defendant, including the defendant, as to whether defendant was acting in defense of a female with whom each had alternatingly lived, either meretriciously or as common law husband and wife. She testified that she was the defendant’s common law wife before the shooting. At the time of the shooting the female had been living in an apartment with her children and her mother. She said two of her children were by the defendant. The victim had been living next door in an apartment with his grandmother for about two months before the shooting. The shooting occurred in the area of the two apartments, which are jointly referred to in the evidence as a duplex.
There is now no issue as to the sufficiency of the evidence to support the verdict, and we find that there is no basis for a reasonable contention that the evidence was insufficient. Except as to parts of the evidence hereafter mentioned, we omit as unnecessary any further discussion of the evidence.
During the cross-examination by defendant of Leroy Wilson, the alleged victim, in which he had stated that he “was living with my grandmother and stuff” but that “at night I was sleeping up there” with the mentioned female living next door, the following occurred:
“Q. You let other people know you were living there?
“A. Yeah.
“Q. Who did you let know so we can get them into Court so they can testify for you?
“MR. GILLIS: Objection.
“THE COURT: Sustained.
“A. My grandmother, she knows.
“THE COURT: Don’t answer that. Instruct the jury to disregard that. Let me tell you something. You will have to answer these questions as asked and not add a thing in the world. Just answer the question that is asked.
“MR. GILLIS: Your Honor. We again object to the line of questioning as to how long he lived or where he lived. The State fails to see the relevancy of those questions to whether or not Willie Pickett shot with intent to kill this witness.
“MR. SMITH: Your Honor, this is cross-examination and I expect to impeach him on every one of these points.
“THE COURT: Overruled.
“MR. GILLIS: Yes, sir.”
Appellant says that the sustention of the State’s objection to the question, “Who did you let know so we can get them into Court so they can testify for you?” was erroneous. Assuming that there may have been merit in any question asking the witness as to the identity of the people he had let know that he was living there, the addendum to such a question, “so we can get them into Court so they can testify for you” is argumentative *156 and any forthright answer to the question, without responsive argument, would have been equivocal. Furthermore, the purported answer given by the witness to the question that “My grandmother, she knows” demonstrates that the question was so involved that the objection to it was properly sustained. The trial court was not in error in doing so.
Appellant in his brief states:
“On page 42 on 43 of the transcript, defense attorney was cross-examining a witness as to details on the price and type of rum he had been drinking prior to the shooting. The State objected to this cross-examination and the State's objection was sustained by the trial court.”
We quote portions of the cited pages of the transcript, occurring during the cross-examination of the alleged victim:
“Q. You didn’t buy no rum or nothing yourself?
“A. Well, like I say, we were passing on that. That’s all I was drinking over at Tommy Calhoun’s house, and a piece cost $6.55.
“Q. $6.55. What kind of rum?
“A. What you call it?
“MR. GILLIS: Your Honor, the State objects.
“THE COURT: Okay. I’ll sustain that.
“MR. SMITH: Your Honor, I am going to go down to the liquor store and see if I can find some $6.55 rum.
“A. Yes, you can.
“Q. Tell me what kind it is?
“A. Bacardi.
“MR. GILLIS: Your Honor, the State should simply request that defense counsel make some representative showing to the Court that this is relevant to this entire matter.
“MR. SMITH: Your Honor, his state of intoxication is very relevant in this matter. It reflects on his recollection as to what happened. His temperament or mood when he is intoxicated and I just want to pinpoint how much he had to drink.
“MR. GILLIS: Your Honor. What does that have to do with how much it cost, though, that’s what we are asking?
“MR. SMITH: He made a statement that they put up $2.00 a piece, Your Honor, and somebody made a profit out of the deal.
“THE COURT: I am going to sustain that. I think that’s irrelevant.”
The quotation from the transcript discloses that defendant was able to show, and did show, by the witness the “details on the price and type of rum he had been drinking prior to the shooting” and disproves any contention that the court prevented him from doing so.
Appellant states in his brief:
“On page 72 of the transcript, the trial court sustained a State objection to the question, ‘Now, does those photographs accurately, correctly and depict that house and that scene as it was at the time of the shooting, to the best of your knowledge, or the time that you were out there, two days later?’ This was a preliminary question prior to introducing defense exhibit’s 1-6, which were photographs of the alleged crime scene.”
The transcript discloses, as the appellant asserts, that the court did sustain the State’s objection to such question and an apparent understanding (or misunderstanding) that defendant was attempting to show the accuracy of the pictures as of the time of the shooting as distinguished from the time the witness observed the scene, which was two days after the shooting. The transcript further shows that when it was made clear to all concerned that defendant was asking as to the accuracy of the photographs as of the time the particular witness observed the premises, two days after the shooting, his testimony to that effect was admitted and the photographs were admitted in evidence. Any error in sustaining the particular objection of the State was cured by the subsequent action of the court.
We have discussed all of the contentions made by appellant to the effect that the court denied defense counsel the “wide latitude to which it was entitled in cross- *157 examination of witnesses.” We agree with him as to the principle of law stated, but as indicated above we find that there was no instance in which he was denied the wide latitude to which he was entitled in his cross-examination of witnesses.
The female around whom the trouble between defendant and the alleged victim revolved testified as a witness for defendant. Appellant seems to complain of the court’s sustention of an objection by the State to a question asked her as to what Leroy Wilson said about a month before the shooting at a conference among the female, the defendant and Leroy Wilson. The question obviously called for hearsay testimony, and there is no indication of any claim that it came within any exception to the rule of exclusion of hearsay testimony. The court was not in error in its ruling. Also, in a question asked another witness for defendant on direct examination as to whether she knew of “any other occasion” that the mentioned female told Leroy Wilson “not to come to her house” called for inadmissible hearsay testimony, and the State’s objection thereto was properly sustained.
Another insistence on error is based on a ruling of the trial court as shown during the direct examination of defendant as a witness:
“Q. Then what happened?
“A. When I pulled the pistol out he had the knife around her throat, sir, and so I know, I just knowed he was going to kill her. I said ...
“MR. GILLIS: Objection. Self-serving.
“THE COURT: Sustained.
“Q. What did you say, if anything?
“A. I didn’t say anything. When I run through the door he shoved her and he didn’t ran. He went towards, the you know, the middle room. I went behind him. I went behind him and when I went behind him he acted like he going, you know, he, he acted like he just wanted to turn, you know, kill, just kill, you know. I didn’t shoot. I shot once, you know, to warn, you know, and he acted like he didn’t want to leave on out the house.
“Q. And then what happened?
“A. I shot him after he acted like he didn’t want to leave.”
Our analysis of the quoted portion of the transcript does not enable us to determine the part of the purported answer of the witness to which the objection was made on the ground that it was “Self-serving.” We hardly see that it could have been referable to the portion of his answer in which he stated, “I just knowed he was going to kill her,” as the term “self-serving” is usually referable to what one says while not testifying as a witness. If it was referable to the interrupted sentence beginning, “I said . . .,” it is our opinion that it would not have been objectionable for the witness to testify what he said on the occasion of the commission of the alleged crime. At any rate, as the transcript shows, the defendant was allowed to answer any question as to what he said, by saying, “I didn’t say anything.” Moreover, if the objection is referable to what the witness had said, “I just knowed he was going to kill her,” it did not serve the place of a motion to exclude the statement from the consideration of the jury. This left the statement for the consideration of the jury, it would seem, to the same extent as if there had been no objection to it and no sustention of the objection. There was no error prejudicial to the defendant in the particular ruling of the court.
During the direct examination of Leroy Wilson, he testified as to what defendant said to him while Wilson was in the hospital for treatment for his injury, by saying:
“Well, he said Diane (the mentioned female) and him and she had told him all about what’s happened and say if I don’t make no charges against him he’ll help me pay half of the hospital bill and I told him he’ll ain’t gonna left him pay half of nothing, he liked to kill me, man, just like that. He said ‘If you don’t then when you get out me and you gonna meet in the street and we’re gonna have it out.’ ”
*158 Appellant says, “The trial court abused its discretion in allowing this very damaging testimony, which was irrelevant, immaterial and incompetent as to an event which took place several days earlier.” There was no objection to the particular question as to which the above statement of Leroy Wilson was an answer and no motion to exclude the statement as evidence. For that reason, no error in connection with it is chargeable to the trial court. In addition, we think the evidence was not subject to a general objection for the reason that it indicated an attempt by defendant to suppress evidence admissible against him. Staggs v. State, 51 Ala.App. 203, 283 So.2d 652 (1973); Strange v. State, 43 Ala.App. 599, 197 So.2d 437 (1966); Sandlin v. State, 25 Ala.App. 311, 146 So. 82 (1933); Haisten v. State, 50 Ala.App. 504, 280 So.2d 209 (1973); Brown v. State, Ala.Cr.App., 339 So.2d 125 (1976); Conley v. State, Ala.Cr.App., 354 So.2d 1172 (1977).
During the cross-examination by defendant of the witness Leroy Wilson as to the occasion for his being where he was when the altercation occurred, the transcript shows:
“Q. And there ain’t no question you was over there arguing?
“A. Yeah.
“Q. Now, you had a perfect right to be there and she invited you in, is that correct?
“A. Correct.
“Q. Why did you run out the backdoor if you had a perfect right to be there?
“A. He [Defendant] had come up there and he had killed my uncle and I don’t take no chances on anybody coming....
“MR. SMITH: We are going to object to that, Your Honor.
“THE COURT: Okay. Wait a minute.
“MR. GILLIS: Your honor, this is in response to counsel’s question as to his motive and intent as to his action, and counsel is just stuck with the answer.
“THE COURT: Overruled. I’m sorry. Sustained. You got me confused. Overrule the objection.”
The confusion is regrettable, but to some extent it is understandable. At any rate, the court is not properly chargeable with reversible error in overruling the objection of defendant. The answer was responsive to the question. Where a witness gives a responsive answer, the party eliciting the answer has no right to have it excluded. Hammond v. State, 147 Ala. 79, 41 So. 761 (1906); Dickens v. State, 142 Ala. 49, 39 So. 14 (1905).
There is no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.