Rape in the second degree; sentence: ten years' imprisonment.
The fourteen-year-old prosecutrix testified she was awakened by her father, the appellant, at 6:00 a.m. on the morning of February 14, 1981. He directed her to go to *Page 596 
his bedroom, and then he went to look to make sure that her step-mother had departed for work and that the door was locked. Appellant returned to the bedroom and instructed the prosecutrix to undress and get into his bed. After a few minutes, he pulled down his underwear and made the prosecutrix sit on top of him. He then proceeded to have sexual intercourse with the prosecutrix, after which he instructed the prosecutrix to take a shower. The prosecutrix testified this was only one incident in a long history of sexual abuse which began when she was only seven years old, after her mother and appellant divorced.
Dr. Andy Kirk testified he examined the prosecutrix on February 17, 1981. His examination revealed that the prosecutrix's vaginal opening was consistent with that of a sexually mature woman who had repeated sexual intercourse, rather than with that of a fourteen year old girl. He also observed that the prosecutrix's hymen had been destroyed, indicating that she had been sexually active.
The appellant testified in his own behalf and also presented corroborating witnesses who refuted the chronological sequence of events testified to by the prosecutrix. He denied ever having sexually abused his daughter.
The sufficiency of the evidence is not raised and we will detail only that evidence necessary to determine the issues raised.
 I
The record reflects the following occurred during the direct examination by the State of Dr. Kirk:
 "Q Now, prior to your examination did you elicit what we know as a history from this patient?
 "A I did obtain a history both from the patient and the social worker together.
 "MR. McCABE: Your Honor, we would object to anything that he obtained from the patient or the social worker. As far as his findings that's fine. But anything that they would say would be hearsay we would say.
"THE COURT: Overruled.
"MR. McCABE: We would respectfully except.
 "Q What history did [the prosecutrix] present to you at that time?
 "A At the time of her presentation she was at that time fourteen years old. And she indicated to me that she had had sexual abuse or intercourse that had been going on since the age of eleven.
"Q Did she indicate with or by whom?
"A This was from her father.
 "Q What other history did she give you in terms of her medical —
 "A She gave a history that she had been to a physician in a nearby clinic who had placed her on oral contraceptives. He did not at the time do a complete exam. She was having some problem with her menstrual period and was concerned about the possibility of pregnancy or some difficulty with her period — with the pills."
Appellant alleges it was improper for the doctor to testify as to who was responsible for the prosecutrix's sexually mature condition. However, we point out that appellant's objection was not directed to that portion of the testimony in which the appellant was identified as the source of the condition. There was no error in allowing the doctor to merely testify that he received a history from the prosecutrix, so as to allow him to show the basis of his opinion. Frazier v. State, 366 So.2d 360
(Ala.Crim.App. 1978).
A timely objection, stating specific grounds, must be made to the introduction of the evidence. As well, a ruling on the objection must be made by the trial court. Pickett v. State,391 So.2d 154 (Ala.Crim.App. 1980); Gibbs v. State,342 So.2d 448 (Ala.Crim.App. 1977). Because there was no objection, no ruling by the trial court, and no motion to exclude, there is no error preserved for our review.
 II
Appellant argues that the introduction of testimony by the prosecutrix concerning her father's prior sexual misconduct *Page 597 
toward her created error requiring reversal of his conviction. We note first that the initial testimony by the prosecutrix that her father had forced relations upon her since she was seven years old came in without objection, and hence appellant preserved no error for us to review as to the substance of that testimony. Pickett, supra. The later introduction of further details of appellant's sexual conduct which were objected to created no error because in a carnal knowledge case the prosecution may introduce proof of sexual relations between the accused and the prosecutrix which occurred both before and after the act on which the prosecution is based. Deason v.State, 363 So.2d 1001 (Ala. 1978). There is a remoteness limitation placed upon this rule. However, it appears to be liberally applied, as in the three-year time span in Deason, supra. In the instant case, while the evidence of prior misconduct went back some seven years, the testimony illustrated a continuing pattern from that time until February 14, 1981, with repetition of the misconduct occurring "almost daily" at points during the seven-year period.
Where the evidence of the misconduct is admissible, as here, the State may prove in meticulous detail the manner in which a defendant committed the misconduct. Weatherford v. State,369 So.2d 863 (Ala.Crim.App.) 369 So.2d 873 (Ala. 1979), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979). Therefore, we find no error in the admission of the prosecutrix's testimony.
 III
During the appellant's presentation of his case-in-chief, his counsel called the prosecutrix to the stand to testify. The court reporter indicates in the record that the prosecutrix was called as a witness by the defendant. Appellant's counsel did not indicate for what purpose he called the prosecutrix. Appellant's counsel did make the following statement, however, at the close of the prosecutrix's testimony during the presentation of the State's case:
"MR. McCABE: That's all at this time.
"MR. HOOKS: That's all at this time.
"MR. McCABE: Subject to recall, please, Your Honor.
"THE COURT: You mean to recall her as your witness?
"MR. McCABE: Perhaps later, Your Honor."
Additionally, during the argument before the judge concerning appellant's having called the prosecutrix to testify, the following appears:
 "He just called this witness as his own witness. He asked her was her stepmother nosey and she said no. Now he can't impeach her. She's his own witness.
 "THE COURT: David, let the record show that we are out of the hearing of the jury. I don't think the letter can come in.
 "MR. McCABE: Okay. We respectfully except. That's the only questions we have of this witness, Your Honor."
We note appellant's counsel did not rebut the prosecution's argument that he had called the prosecutrix as his own witness.
Appellant now contends the trial court erred in refusing to allow him to introduce a letter written by the prosecutrix, for the purpose of impeaching her testimony. This issue has been thoroughly discussed in our recent case of Walker v. State,416 So.2d 1083 (Ala.Cr.App. 1982). We find under the principles discussed in Walker, supra, appellant called the prosecutrix as his own witness. Absent a clear showing of surprise or of an intent to refresh recollection by the introduction of the letter, it was not proper for appellant to impeach his own witness, and the trial court did not err in refusing to allow him to do so. Walker, supra. Appellant's discussion of the rules of cross examination in his brief are inapplicable to the instant case as we view the record in light of the above holding.
 IV
Appellant contends the trial court erred in allowing the State to introduce the testimony of witness Catherine Hanson to *Page 598 
impeach the prior testimony of witness Cathlene Hammes without first laying a proper predicate in the formation of the question posed to witness Hanson. The record reveals the following:
"Q State your name for the Court, please, ma'am?
"A Catherine Hanson.
 "Q By whom are you employed, Miss Hanson and in what capacity?
"A Coffee County Department of Pensions and Security.
"Q Were you so employed on February 17th of 1981?
"A Yes, sir.
 "Q On that date did you have the occasion to become involved in a case of . . . [prosecutrix].
"A Yes, I did.
 "Q And subsequently on that date did you have occasion to be present with [the prosecutrix] at the Department of Youth Services down at the Enterprise Police Station?
"A Yes, sir. I did.
 "Q Did you have occasion on that same day to see Mrs. Cathy Hammes, stepmother?
"A Yes.
 "Q Do you recall approximately what time of the day that was?
"A Approximately 5:00 o'clock in the afternoon.
 "Q And I assume that Mrs. Hammes' occasion for coming there was the fact that she had been notified that your agency had taken custody of the child, is that correct?
"A That's correct.
 "Q Once she arrived did she make any statements — was she advised of what the allegation was against her husband at that time?
"A Yes, sir. She was.
 "Q What statements if any did she make to you at that time on February 17, 1981, in the DYS Office with reference to her beliefs concerning this defendant's involvement in this case and an affair with a Henrietta Williamson, a seventeen year old girl.
 "MR. McCABE: Judge, I'm going to object. He's leading her.
"MR. HOOKS: Judge, I —
"MR. McCABE: Rephrase it.
 "MR. HOOKS: No, I don't want to rephrase the question. The question is this. It's offered strictly to impeach the testimony of Cathy Hanson and it's exactly the question I asked her and she denied the conversation took place.
"MR. McCABE: Impeach Cathy Hanson?
 "MR. HOOKS: I mean Cathy Hammes. The Court is aware of what I'm talking about.
"THE COURT: Overruled.
"MR. McCABE: Respectfully except.
 "Q Did you have a conversation with the defendant's wife at that time about that?
"A Yes, sir. I did.
"Q Cathy, what did she tell you in that regard?
 "A Mrs. Hammes said that she had not known about the abuse but she could see somewhat how it could have happened. She said that because she had suspected her husband of having affairs with women in the past and she had some suspicion but no proof that he was having an affair with a seventeen-year-old girl named Henrietta.
 "Q Named Henrietta. Would that be Henrietta Williamson?
"A She didn't name a last name."
The record indicates that appellant's objection to Ms. Hanson's testimony was on the grounds of a leading question, even though the prosecution made it clear that its purpose was to impeach Ms. Hammes' prior testimony. Specific grounds of objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned. Franklin v.State, 357 So.2d 364 (Ala.Cr.App.), cert. denied, 357 So.2d 368
(Ala. 1978); Johnson v. State, 364 So.2d 1187 (Ala.Cr.App.), cert. denied, 364 So.2d 1190 (Ala. 1978). Additionally, the witness did not answer the question to which appellant objected. Had the question *Page 599 
been improper, it was harmless in the absence of an answer. Ward v. State, 356 So.2d 238 (Ala.Cr.App.), cert. denied, 356 So.2d 242 (1978).
 V
Appellant's final contention is that the trial court erred in refusing to read the testimony of certain witnesses, upon the jury's request, after the jury began deliberations. We point out that appellant's counsel objected to the jury's request, unless the entire trial was read back to the jury. The decision to allow the jury to rehear testimony is a matter addressed to the sound discretion of the trial court. Cooper v. State,340 So.2d 91 (Ala.Cr.App. 1976); Jenkins v. State, 51 Ala. App. 521,287 So.2d 233 (1973). There was no abuse of the trial court's discretion, in our view, in honoring appellant's all or none request by refusing to read any of the testimony to the jury.
The judgment of the Coffee Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.