James Edward Coburn was indicted by a Baldwin County grand jury in July of 1981 for burglary in the first degree. He was convicted and was sentenced to 30 years. Hence this appeal.
Mrs. Patricia White left her home in Daphne, Alabama, about 8:30 p.m. on March 27, 1981, to attend to some personal matters. Upon returning to her home about two hours later, Mrs. White discovered two strange men in the bedroom portion of the home in the process of ransacking the home and putting articles into a pillow case. When she called out to them, one of the men grabbed Mrs. White, threw her against the door (breaking her arm), and ran out the front door. The other man, carrying the partially filled pillow case, ran out the back door. Mrs. White went out the front door and sought the help of a neighbor who happened to be in the vicinity. The neighbor apprehended the man who went out the front door and returned him to Mrs. White's residence. The suspect, Gary Stephen Easterling, was subsequently turned over to the sheriff's department.
Easterling, who implicated the appellant as the man who burglarized the home with him, subsequently pleaded guilty to second degree burglary.
Appellant denied his involvement in the burglary, testifying that he was with his mother at the time at which the burglary occurred. Appellant's mother corroborated his testimony.
 I
The first issue presented for review relates to Mrs. White's in-court identification of appellant.
About two hours before the beginning of the trial, the district attorney staged an impromptu line-up, which was viewed by Mrs. White, without the knowledge or consent of appellant's counsel. Mrs. White identified appellant in the line-up as the man who ran out the back door of her home on the date of the burglary.
Obviously, the line-up occurred at a critical stage of the prosecution, after appellant was arraigned on the charge and was represented by counsel. Both appellant and his counsel should have been notified by the district attorney of the impending line-up, and counsel's presence should have been a requisite to the holding of the line-up, in the absence of an intelligent waiver. See United States v. Wade, 388 U.S. 218,87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The record is silent as to any waiver.
Therefore, the question now presented is whether the denial of appellant's motion to exclude Mrs. White's identification testimony constitutes error requiring reversal. We conclude and find that the admission of Mrs. White's in-court identification *Page 667 
of appellant, without first determining that it was not tainted by the line-up but was of independent origin, would be a constitutional denial of appellant's right to counsel. Gilbertv. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178
(1967).
On voir dire examination, prior to the in-court identification and out of the presence of the jury, Mrs. White testified as follows:
 "THE COURT: Let me ask you this, Mrs. White. Have you seen this man since the incident which you were accosted in your house?
"THE WITNESS: No, sir.
 "THE COURT: And you got a good view of him at that time, you said?
"THE WITNESS: Yes, sir.
"THE COURT: And can you identify that man now?
"THE WITNESS: Yes, sir, I certainly can.
"THE COURT: Where is he?
"THE WITNESS: Sitting right there (indicating).
 "THE COURT: All right. Did this view, which you went in and looked in this room, did you recognize him instantly?
 "THE WITNESS: They had each one, they had me look at each one and have them turn around. I didn't look at them as a whole, I had to look at each one.
 "THE COURT: But you say that's the man you recollect being in your house that day?
"THE WITNESS: Yes sir, it really is.
"BY MR. NORTON:
 "Q. The question is, my ultimate question is, could you and can you identify this person without regard to that?
 "THE COURT: That's what I asked her, did she independently recognize him now without having to go through that and she said yes."
Additionally, Mrs. White testified on direct examination that she got a good view of appellant at the scene of the robbery, that she and appellant at one point were only about three feet apart, and that she observed him for about ten seconds as he unlocked and opened the exit door. The burglary incident was about eight months before the trial date.
Based on Mrs. White's opportunity to observe appellant at the scene about eight months prior, as shown by her direct testimony, and the voir dire colloquy between the trial judge and the witnesses, we hold that the in-court identification of appellant by Mrs. White was based on her independent recollection and was not tainted by the illegal line-up. Accordingly, we find that the trial court properly denied appellant's motion to exclude.
 II
Appellant urges a fatal variance between the date alleged in the indictment and the date proved at trial.
The charging part of the indictment provides:
 "The Grand Jury of said County charge that before finding this indictment on to-wit: March 4, 1981, James Edward Coburn whose name is otherwise unknown to the Grand Jury other than as stated, did, knowingly and unlawfully enter or remain in a dwelling of Pat White with intent to commit a crime therein to-wit: Theft of Property and while in immediate flight therefrom said defendant did cause physical injury to Pat White by knocking her to the ground and breaking her arm in violation of Title 13A-7-5 of the Code of Alabama, against the peace and dignity of the State of Alabama."
The record before us reveals that the indictment was returned in July 1981, and that the offense occurred on March 27, 1981.
It is not necessary to state the precise time at which an offense was committed in an indictment, but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense. Section15-8-30, Code 1975. *Page 668 
Time is not a material ingredient in the charge of burglary. Time would be a material ingredient of the offense only if it were a new offense, or when the grade of an offense has been raised from a misdemeanor to a felony and covers a period both when the act was and was not an offense, or when it was of a lesser grade. Such is not the case here.
Inasmuch as time is not a material ingredient of the offense charged in this indictment and since the indictment charges that the offense occurred "before finding this indictment," we hold that the allegation of a specific date in the indictment is mere surplusage and that the terminology of the indictment gave sufficient notice to the appellant of the accusation he was called on to answer.
Appellant relies on Brown v. City of Tuscaloosa, 196 Ala. 475,71 So. 672 (1916), as authority for the proposition that the variance is fatal. In that case, the offense proved at trial occurred after the date the defendant was charged, which divested the trial court of jurisdiction. In the instant case, the offense occurred prior to the time the indictment was returned; therefore, Brown has no application.
 III
Appellant contends that the trial court erred to reversal by depriving him of the right to cross-examine witnesses against him.
Gary Stephen Easterling, who identified appellant as the one who burglarized the house with him, had previously pleaded guilty to burglary in the second degree in this incident and was awaiting sentencing at the time of this trial. Easterling initially invoked the privilege against self-incrimination and refused to testify concerning appellant's alleged involvement in the burglary. The State then made known its desire to call Easterling as a hostile witness. On voir dire examination by appellant on the issue of hostility, Easterling changed his prior position, indicating that he intended to testify and "tell about the burglary, the way it happened."
Appellant's specific contentions relate to the cross-examination of Easterling as to (1) the reason for changing his mind and testifying against appellant, and (2) Easterling's alleged attempted suicide.
 A
Appellant cross-examined Easterling extensively in an apparent attempt to discredit Easterling's testimony and to show that it was given in exchange for a promise by the State of a lesser sentence. During that cross-examination, Easterling testified that he entered a guilty plea on his attorney's recommendation in order that he "might get a light sentence, but not for my testimony." He also testified that he had no prearranged agreement with the district attorney and that he had not "ever talked to a D.A."
After that, the record reveals the following cross-examination:
"BY MR. BOLTON: [Appellant's attorney]
 "Q. I want to know, Mr. Coburn, why you — excuse me, I mean, Mr. Easterling, why you changed your mind from earlier today until now to testify.
 "A. (Pause) Because I believed it was in my best interest.
 "Q. You believed it was in your best interest. Okay. Now, is that best interest measured by the sentence that you get?
 "MR. NORTON: [District Attorney] Objection, Your Honor, he has no control over that.
 "THE COURT: That's right. He says he thinks it's best because it's his best interest. Sustain the objection.
"BY MR. BOLTON:
 "Q. Explain to me what you mean by your best interest.
"A. (Pause) I can't really tell.
 "Q. Well, you said it was in your best interest to testify. What do you mean by that?
 "MR. NORTON: Judge, I object on the grounds that he stated he thinks it's in *Page 669 
his best interest and it's irrelevant and immaterial why.
 "THE COURT: I think it's very obvious that he hopes he can get a lesser sentence. Now, Mr. Easterling, what you are testifying to now, is that the truth? What you are testifying to now, is that the truth?
"THE WITNESS: Yes, Your Honor, it is."
Appellant contends that the sustention of the State's first objection, quoted above, was erroneous.
The cross-examiner is allowed great latitude in questioning a witness to ascertain his motive in testifying. Noble v. State,253 Ala. 519, 45 So.2d 857 (1950); Williams v. State,44 Ala. App. 503, 214 So.2d 712 (1968).
However, the trial court here was not in error for two reasons. The question had been answered by the witness in prior cross-examination when he testified that his attorney advised him that he "might get a lighter sentence, but not for my testimony." No error occurs when the court sustains objections to questions which have already been answered by the witness.Pickett v. State, 391 So.2d 154 (Ala.Crim.App. 1980); Collinsv. State, 364 So.2d 368 (Ala.Crim.App. 1978); Brown v. State,392 So.2d 1248 (Ala.Crim.App.), cert. denied, 392 So.2d 1266
(Ala. 1980). Secondly, the rule is well established that when an objection is sustained to a question asked on cross-examination, the questioning party must make an offer of proof, calling the attention of the court to the expected answer and the materiality of the answer; otherwise, the party cannot predicate an appeal upon the sustaining of the objection as an erroneous ruling. Collins v. State, supra.
 B
Appellant questioned Easterling on cross-examination concerning attempted suicide while in jail, and the trial court sustained the State's objection to the question. Appellant contends that constitutes error. We do not agree.
The scope of cross-examination in a criminal proceeding is within the discretion of the trial judge, and it is not reviewable except for the trial judge's prejudicial abuse of discretion. The right to a thorough and sifting cross-examination of a witness does not extend to matters that are collateral or immaterial and the trial judge is within his discretion in limiting questions which are of that nature.Collins v. State, supra.
The question of whether the witness attempted suicide while he was in jail is wholly irrelevant to the issues of the trial.
We find no abuse of discretion in the trial judge's sustaining of the objection.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.